UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

NINTENDO OF AMERICA INC., and DOUG BOWSER

Movant,

v.

DANTE DEMARTINI, CURTIS BURNS JR., NICHOLAS ELDEN, JESSIE GALVAN, CHRISTOPHER JOSEPH GIDDINGS-LAFAYE, STEVE HERRERA, HUNTER JOSEPH JAKUPKO, DANIEL DERMOT ALFRED LOFTUS, BEOWULF EDWARD OWEN, and IVAN CALVO-PEREZ,

Respondents.

NO. **2:23-mc-00036-TL**

MOTION TO QUASH SUBPOENA BY NON-PARTIES NINTENDO OF AMERICA INC. AND DOUG BOWSER

NOTE ON MOTION CALENDAR: MAY 19, 2023

Pursuant to Fed. R. Civ. P. 26 and 45, non-parties Nintendo of America Inc. ("NOA"), a Washington corporation, and its President Doug Bowser (collectively, the "Nintendo Non-Parties"), hereby move to quash the Subpoena to Testify at a Deposition in a Civil Action issued to "Doug Boswer [sic], CEO and President, Nintendo of America Inc." (the "Subpoena") by the plaintiffs (the "DeMartini Plaintiffs") in an action pending in the United States District Court for the Northern District of California, *DeMartini et al. v. Microsoft Corp.*, Civil Action No. 3:22-

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

cv-08991-JSC (the "DeMartini Action"). This motion is brought in this Court pursuant to Rule 45(d)(3)(a) because the Subpoena requires compliance in Seattle, Washington.

The DeMartini Action is a civil antitrust lawsuit, brought on behalf of 10 individuals who play video games (i.e., not a putative class action), challenging Microsoft Corp.'s ("Microsoft") acquisition of Activision Blizzard, Inc. ("Activision") as a violation of Section 7 of the Clayton Antitrust Act (15 U.S.C. § 18). *See* Am. Compl. at 1 (Argyle Decl.[1] Ex. A). Activision is a video game developer, publisher, and distributor, whose *Call of Duty* video game titles are central to plaintiffs' allegations. *Id.* ¶¶ 21, 149, 301. Microsoft is, among other things, a video game developer and publisher that also develops and sells video game platforms (e.g., the Xbox and the Windows operating system for PC) and services (e.g., the Game Pass multi-game subscription service). *Id.* ¶¶ 11, 88-89, 130-32. The Demartini Plaintiffs allege that the acquisition will "lessen competition in five relevant markets in the United States[.]" *Id.* ¶ 2. Neither NOA nor Mr. Bowser are parties to the Demartini Action. *See id.* at 1.

The lawsuit was already recently dismissed once, for its failure to articulate any "appreciable danger of anticompetitive effects" in any of the proposed markets. Order at 6, DeMartini Action (Mar. 20, 2023), ECF No. 74 ("MTD Order") (Argyle Decl. Ex. B). The Demartini Plaintiffs filed an Amended Complaint on April 10, 2023, and issued the Subpoena four days later. *See* Am. Compl. at 1 (Argyle Decl. Ex. A). The Demartini Plaintiffs have not taken any other discovery from NOA, yet seek to now depose NOA's President, Doug Bowser, on 11 days' notice. *See* Subpoena at 1 (Apr. 14, 2023) (Argyle Decl. Ex. C) (requiring Mr. Bowser's deposition on April 25, 2023).

---

[1] Declaration of Benjamin P. Argyle in Support of Motion to Quash Subpoena (Apr. 24, 2023) ("Argyle Decl.").

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

Microsoft's motion to dismiss the amended complaint is pending. That motion, as well as plaintiffs' request for a preliminary injunction, will be argued on May 12, 2023. As discussed below, the Judge presiding over the DeMartini Action (Judge Corley) has identified two threshold questions for plaintiffs' amended complaint and Microsoft's motion, expressed skepticism that these plaintiffs can adequately answer either question, and limited the parties' argument at the May 12 hearing to the following: (i) whether these plaintiffs can show immediate irreparable harm arising out of the closing of the transaction, and (ii) the size of the bond that these 10 plaintiffs would have to post if they are successful in obtaining a preliminary injunction.

Neither issue has anything to do with NOA or Mr. Bowser, and the Demartini Plaintiffs have refused to articulate why Mr. Bowser's testimony is necessary at all, let alone on such short notice. Microsoft's videogame titles were available on Nintendo platforms before the acquisition was announced, and will continue to be available regardless of whether the acquisition goes forward. NOA's only involvement in the underlying events is that in December 2022, eleven months after Microsoft first announced the Activision acquisition, Nintendo Co., Ltd. ("NCL," NOA's corporate parent) and Microsoft signed a Letter of Intent ("LOI") and subsequent "Side Letter" to make Activision's *Call of Duty* videogame titles available on Nintendo platforms if the acquisition goes forward.

The *Call of Duty* titles are not currently available on the Nintendo Switch. If the acquisition goes forward, the *Call of Duty* titles will be available on Nintendo platforms, i.e., more available than they are now. If the acquisition is blocked, the *Call of Duty* titles will maintain their current status as unavailable on the Nintendo Switch. Neither of the possible outcomes can harm these ten plaintiffs. Therefore, the LOI, Side Letter, and the availability of

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

these titles on Nintendo platforms is unrelated to the question of whether the Demartini Plaintiffs will be harmed if the transaction goes forward.

Regardless, Mr. Bowser had little involvement in negotiating, and did not sign, the LOI. He has no unique, first-hand knowledge about the only issues currently pending in the DeMartini Action, and the Plaintiffs have not attempted other less intrusive methods of discovery to obtain the discovery they think they need. Therefore, the Subpoena violates the apex deposition jurisprudence in this Circuit. Plaintiffs have refused to articulate an adequate basis for his testimony at all, let alone why they need it on 11 days' notice. Therefore, NOA and Mr. Bowser respectfully request that the Court quash the Subpoena in its entirety.

## I. STATEMENT OF FACTS

### ***The DeMartini Action***

Microsoft announced its plan to acquire Activision on January 18, 2022. Am. Compl. ¶ 7, Demartini Action (Apr. 10, 2023), ECF No. 84 (Argyle Decl. Ex. A). The Federal Trade Commission initiated an administrative action to block the acquisition on December 8, 2022. Compl. at 23, *In re Microsoft Corp. et al.* (FTC Dkt. No. 9412) (Argyle Decl. Ex. D). The DeMartini Plaintiffs filed their original Complaint, which largely copied the FTC's complaint, on December 20, 2022. *See* Argyle Decl. ¶ 2, Ex. E ("N.D. Cal. Docket") at 13. They also filed a motion for a preliminary injunction, asking the Northern District of California to block the acquisition, on that same day. *See id.* at 13.

Microsoft then filed its motion to dismiss on January 31, 2023. *See* N.D. Cal. Docket at 18. The Court quickly scheduled oral argument on the motion to dismiss, for March 16, 2023. *See id.* at 19. At that hearing, the Judge indicated that she would dismiss Plaintiff's complaint for failure to state a claim without prejudice to re-file, and vacated the preliminary injunction

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

hearing. Tr. of Hearing at 83, 89-90, DeMartini Action (Mar. 16, 2023) (Argyle Decl. Ex. F); MTD Order at 11-12. On March 20, 2023, Judge Corley formally dismissed the complaint, with leave to re-plead. *See* MTD Order at 11-12.

The DeMartini Plaintiffs filed their Amended Complaint on April 10, 2023. *See* N.D. Cal. Docket at 24. The Court again quickly set and held a status conference, on April 12, 2023. *See id.* at 26. At that status conference, Judge Corley stated: "[F]rankly, I'm not aware of actually any consumer case in which preliminary injunction has been granted, but let alone where no [bond] has been required. And it's kind of a big merger." Tr. of Status Conference at 5, DeMartini Action (Apr. 12, 2023) (Argyle Decl. Ex. G). Judge Corley also stated: "I'm skeptical giv[en] what's out there, giv[en] the case law, giv[e]n that a consumer and particularly these are people who play video games, that they're going to be able to show an immediate irreparable harm if the merger [goes forward]." *Id.* at 21-22. She expressed concern about allowing "whatever discovery [plaintiffs] are entitled to" before deciding these two threshold issues." *Id.* at 22. Accordingly, she ordered that the parties must address only two issues before the case would be allowed to proceed: "irreparable harm and the bond issue." *See* Scheduling Order at 1, DeMartini Action (Apr. 13, 2023), ECF 97 (Argyle Decl. Ex. H). Those issues will be heard at the May 12, 2023 preliminary injunction hearing.

***The DeMartini Discovery Demands to NOA***

On December 6, 2022, Microsoft and NCL signed the LOI, which will make Activision's *Call of Duty* videogame titles available on Nintendo platforms if the acquisition moves forward.

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

Am. Compl. ¶¶ 329, 337; Kiel Decl. ¶ 3.[2] Mr. Bowser did not negotiate the LOI or Side Letter, and did not sign the LOI or Side Letter. Kiel Decl. ¶ 3.

On or about January 30, 2023—before Microsoft filed its motion to dismiss and while the DeMartini Action was still on an expedited schedule—the DeMartini Plaintiffs served NOA with a subpoena for documents and 30(b)(6) testimony, and for the 30(b)(1) deposition of Mr. Bowser (collectively, the "Original Subpoenas"). Argyle Decl. ¶ 8-11, Exs. I and J. The Original Subpoenas called for NOA to produce its external communications with Microsoft about the LOI, and to produce a corporate witness regarding only LOI-related topics. *See* Argyle Decl. Exs. I and J. NOA objected to producing documents that were more easily obtained from Microsoft, objected to Mr. Bowser's deposition as an impermissible apex deposition, but agreed to make its 30(b)(6) witness available on March 22, 2023, to give testimony regarding the LOI. *See* Argyle Decl. Ex. L at 1. The parties agreed to reserve all rights and to revisit their disagreement regarding Mr. Bowser's deposition only after NOA's 30(b)(6) deposition took place. *See id.* at 1-2.

On March 20, 2023, the Court dismissed the DeMartini Plaintiffs' complaint, rendering the Original Subpoenas a nullity. *See* MTD Order.

The DeMartini Plaintiffs then filed their Amended Complaint on April 10, 2023. *See* Am. Compl. at 1 (Argyle Decl. Ex. A). Almost immediately thereafter, they issued the Subpoena. *See* Subpoena (Argyle Decl. Ex. C).

---

[2] Declaration of Kristopher Kiel in Support of Motion to Quash Subpoena (Apr. 24, 2023) ("Kiel Decl."). Microsoft and NCL later supplemented the LOI in an agreement dated February 10, 2023 (the "Side Letter"). Kiel Decl. ¶ 3.

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

NOA's counsel met and conferred with counsel to the DeMartini Plaintiffs on April 14, 2023. Argyle Decl. ¶ 14. On that meet-and-confer, NOA's counsel asked why the DeMartini Plaintiffs needed this testimony on such short notice. *Id.* ¶ 14. The DeMartini Plaintiffs' Counsel was unable to articulate ***any*** legitimate need for this testimony, replying instead:

- "We believe it would be relevant and important for the Court to know about it, and to have that evidence, that's why."
- "We feel that it will be necessary for us to take the depositions of those guys who made agreements."
- "Because you made an agreement."
- "You made an agreement and we want to talk to you about it."
- "We need testimony under oath from your folks because you accepted the agreement. And since you entered into the agreement with them, you know, we want you."
- "We want it."

Argyle Decl. ¶ 14.

## II. ARGUMENT

Rule 45 requires a court to quash or modify a subpoena that fails to allow a reasonable time to comply, or subjects a person to undue burden. FRCP 45(d)(3). "It is well-settled in the Ninth Circuit that non-parties subject to subpoena requests deserve extra protection from the courts." *Docklight Brands Inc. v. Tilray Inc.*, No. 2:21-CV-01692-TL, 2023 WL 1099638, at *3 (W.D. Wash. Jan. 30, 2023) (citation omitted). *See also Exxon Shipping Co. v. U. S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994) (citing Rule 45 as "afford[ing] nonparties special protection against the time and expense of complying with subpoenas."). "Underlying the protections of Rule 45 is the recognition that 'the word 'non-party' serves as a constant reminder of the reasons for the limitations that characterize 'third-party' discovery.'" *Smyth v. Merchants*

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

*Credit Corp.*, No. C11-1879RSL, 2013 WL 5200811, at *2 (W.D. Wash. Sept. 16, 2013) (citing to *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. Mar. 17, 2006) (quoting *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980)). "The Court has liberty and broad discretion to limit discovery to protect non-parties from harassment, inconvenience, or disclosure of confidential information." *Docklight Brands Inc.*, 2023 WL 1099638, at *3.

Rule 26 permits discovery only regarding matter that is relevant to any party's claim or defense and proportional to the needs of the case. FRCP 26 (b)(1) (emphasis added).[3] Here, forcing Mr. Bowser to prepare for and sit for a deposition would be unduly burdensome and disproportionate because Plaintiffs cannot show that he has any knowledge relevant to the only issue currently pending before the court: whether the ten DeMartini Plaintiffs will be irreparably harmed by Microsoft's acquisition of Activision.

Further, even if someone at NOA had relevant knowledge, the DeMartini Plaintiffs are not permitted to skip straight the top of the company. The Ninth Circuit's "apex deposition" jurisprudence is clear: high-ranking officers and officials are ***not*** normally subject to deposition absent extraordinary circumstances. Here, Mr. Bowser has no unique first-hand knowledge of the facts at issue in the case, and the DeMartini Plaintiffs have not even attempted to exhaust other less intrusive discovery methods.

### A. Plaintiffs have not and cannot show that Mr. Bowser's testimony is relevant to the claims in, and proportional to the needs of, the DeMartini Action.

"The purpose of discovery is to provide a mechanism for making ***relevant*** information available to the litigants." *Burlington N. & Santa Fe. Ry. Co. v. U.S. Dist. Ct. for Dist. Mont.*,

[3] The scope of the discovery that can be requested through a subpoena under Rule 45 is the same as the scope under Rule 26. *Smyth*, 2013 WL 5200811, at *1.

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

408 F.3d 1142, 1148-49 (9th Cir. 2005) (emphasis added). "Rule 26 expressly limits discovery to any nonprivileged matter that is *relevant* to any party's claim or defense and proportional to the needs of the case[.]" *Moi v. Chihuly Studio, Inc.*, 846 F. App'x 497, 499-500 (9th Cir. 2021) (emphasis in original). An important factor courts consider in limiting discovery is "the importance of the discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit." FRCP 26(b)(1).

Seemingly skeptical of the viability of the Amended Complaint, Judge Corley instructed the DeMartini Plaintiffs and Microsoft to limit their argument to two threshold topics: (1) whether the DeMartini Plaintiffs can show irreparable harm; and (2) how the DeMartini Plaintiffs plan to obtain a bond for the enjoining of a $68.7 billion proposed acquisition. *See* Scheduling Order at 1, DeMartini Action (Apr. 13, 2023), ECF 97 (Argyle Decl. Ex. H); Tr. of Status Conference at 13, 16-17, DeMartini Action (Apr. 12, 2023) (Argyle Decl. Ex. G).

Mr. Bowser's testimony is not relevant or important to either topic. The LOI and Side Letter address the availability of the *Call of Duty* titles on Nintendo platforms after the acquisition. The only tangentially related theory of harm in the Amended Complaint is the possibility that Microsoft might make Activision's software content "exclusive or partially excusive to Microsoft platforms, including Xbox, Game Pass, XCloud, and Windows[.]" Am. Compl. ¶ 129. But the existence of the LOI and Side Letter are not in dispute—Microsoft has produced both documents to the DeMartini Plaintiffs. Mr. Bowser did not negotiate or sign either agreement. Kiel Decl. ¶ 3. Mr. Bowser is not an attorney, and cannot answer any questions about the legal significance of either agreement. Kiel Decl. ¶ 3. And in any event, such questions are more properly addressed through less burdensome means—for example, by asking Microsoft in the first instance.

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

Moreover, the availability of *Call of Duty* on Nintendo platforms does not change whether the Demartini Plaintiffs will be irreparably harmed by the acquisition. The *Call of Duty* titles are not currently available on the Nintendo Switch. Kiel Decl. ¶ 4. If the acquisition goes forward, either Microsoft will honor the LOI (making *Call of Duty* titles available on Nintendo platforms going forward) or it will not (leaving the Demartini Plaintiffs no worse off than they are now). Similarly, if the Demartini Plaintiffs successfully block the acquisition, then they still are no worse off than they are now, with *Call of Duty* titles unavailable on the Nintendo Switch.

When asked by counsel for the Nintendo Non-Parties on why discovery was needed from the Nintendo Non-Parties after explaining the above, counsel for DeMartini Plaintiffs stated that immediate discovery was warranted "[b]ecause you made an agreement" and because "we want it." Argyle Decl. ¶ 14. None of counsel's responses speak to the need for Mr. Bowser's testimony, nor the proportionality of burdening him and NOA with preparing for and attending the deposition.

Because Mr. Bowser's testimony would not be relevant to the issues in this action, and the costs and burdens of preparing for and attending a deposition would be disproportionate to the needs of the case, NOA and Mr. Bowser respectfully request that the Court quash the Subpoena.

**B. Plaintiffs have not met the prerequisites for taking Mr. Bowser's deposition.**

The Subpoena should also be quashed because it seeks an impermissible apex deposition. Mr. Bowser, NOA's President, is NOA's highest-ranking executive. Kiel Decl. ¶ 2. Courts in the Ninth Circuit recognize that "[d]iscovery seeking the deposition of high-level executives" creates "a tremendous potential for abuse or harassment[.]" *Arminak v. Arminak & Assocs., LLC*, 2017 WL 10402987, at *4 (C.D. Cal. Mar. 30, 2017). *See also Estate of Heath v. Pierce*

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

*Cnty.*, 2021 WL 1386988, at *2 (W.D. Wash. Apr. 13, 2021) (recognizing that "high-ranking or 'apex' employees may be at risk for abusive or harassing discovery requests"). Therefore, "[p]ursuant to the apex doctrine, high-ranking officers and officials are ***not*** normally subject to deposition absent extraordinary circumstances." *Arminak*, 2017 WL 10402987, at *4 (alterations omitted, emphasis added). The apex doctrine applies to high-ranking executives at non-parties as well as parties. *See id.* at *6-7 (granting motion to quash two apex depositions).

In determining whether to allow an apex deposition, courts consider "(1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case," and "(2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Id.* at *4. "Essentially, the closer that a proposed witness is to the apex of some particular peak[,] and the less directly relevant that person is to the evidence proffered in support of his deposition, the more appropriate the protections of the apex doctrine become." *Id.*

The Subpoena is a textbook example of an impermissible apex deposition.

*First*, the DeMartini Plaintiffs have not and cannot show that Mr. Bowser has any unique first-hand, non-repetitive knowledge regarding irreparable harm, and, in any event, he did not negotiate or sign the LOI or Side Letter. Kiel Decl. ¶ 3. And even if Mr. Bowser received some relevant information about the negotiations, that still would not be enough: courts should not allow apex depositions "on the flimsy theory [that] defendant's founder and president might have *some* relevant information." *EEOC v. Fry's Electronics, Inc.*, 874 F. Supp. 2d 1042, 1048 (W.D. Wash. 2012) (disallowing an apex deposition).

The Nintendo Non-Parties have communicated to the DeMartini Plaintiffs several times that Mr. Bowser does not have unique first-hand, non-repetitive knowledge of the LOI or Side Letter. Argyle Decl. ¶ 12. Counsel for the DeMartini Plaintiffs have consistently refused to

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

articulate any unique knowledge that Mr. Bowser might have. Argyle Decl. ¶ 12, 14. They appear to feel that their burden is met merely by signing the subpoena, stating that the deposition is proper merely because "[w]e want it." Argyle Decl. ¶ 14. This is not sufficient justification to burden NOA's highest executive with an unreasonable deposition demand.

*Second*, the DeMartini Plaintiffs have not exhausted less intrusive methods of discovery before seeking to take Mr. Bowser's deposition. *See Monolithic Power Systems, Inc. v. Dong*, 2023 WL 350400, at *5 (N.D. Cal. Jan. 20, 2023) (a court may prohibit an apex deposition when the information sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive"). A party seeking an apex deposition must specifically identify information that cannot be obtained through a 30(b)(6) deposition or written discovery. *Arminak*, 2017 WL 10402987, at *6. Although NOA had previously agreed to provide a corporate witness to testify regarding the LOI and Side Letter, the DeMartini Plaintiffs did not re-issue the 30(b)(6) subpoena after filing their amended complaint.

The Subpoena is a demand for an improper "apex" deposition, and should be quashed. *See also Rookaird v. BNSF Ry. Co.*, 2015 U.S. Dist. LEXIS 180840 (W.D. Wash. July 8, 2015) (denying motion to compel deposition of president and CEO of defendant corporation on the basis of apex doctrine).

## III. CONCLUSION

WHEREFORE, Nintendo of America Inc. and Doug Bowser respectfully request that the Court quash the Subpoena and grant such other relief as the Court deems just and proper.

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

I certify that this memorandum contains 3,390 words, in compliance with the Local Civil Rules.

DATED this 24th day of April, 2023.

        **GORDON TILDEN THOMAS & CORDELL LLP**
        Attorneys for Non-Parties Nintendo of America Inc. and Doug Bowser

        By   s/ *Michael Rosenberger*
            Michael Rosenberger, WSBA #17730
            600 University Street, Suite 2915
            Seattle, Washington 98101
            206.467.6477
            mrosenberger@gordontilden.com

        **VENABLE LLP**
        Attorneys for Non-Parties Nintendo of America Inc. and Doug Bowser

        By   s/ *Benjamin P. Argyle*
            Leonard L. Gordon (*Pro Hac Vice* Pending)
            Benjamin P. Argyle (*Pro Hac Vice* Pending)
            151 West 42nd Street, 49th Floor
            New York, NY 10036
            212.307.5500
            llgordon@venable.com
            bpargyle@venable.com

MOTION TO QUASH SUBPOENA BY NON-PARTIES
NINTENDO OF AMERICA INC. AND DOUG BOWSER - 13

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477